IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| STERLING BANK, a Division of Synovus Bank, a Georgia banking corporation, )<br>)<br>)<br>)<br>  Plaintiff, )<br>)<br>  v. )<br>)<br>)<br>JOSEPH L. HERROD, an individual, BROBST MEDICAL, INC., an Alabama corporation, and CHANDLER & ALECIA, INC., an Alabama corporation, )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>  Defendants. ) | CIVIL ACTION NO.<br>2:15cv540-MHT<br>(WO) |

OPINION

   This is the first of two opinions.  Plaintiff Sterling Bank, a division of Synovus Bank, filed this lawsuit against defendants Joseph L. Herrod, Brobst Medical, Inc., and Chandler & Alecia, Inc., bringing multiple state-law claims arising from the defendants' alleged breach of agreements to guarantee payment of various debts of two medical practices.  Jurisdiction is proper pursuant to 28 U.S.C. § 1332 (diversity).  This lawsuit is now before the court on Sterling Bank's

motion for summary judgment against defendant Herrod. For the reasons below, the motion will be granted.

## I. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. BACKGROUND

The facts, taken in the light most favorable to Herrod, are as follows. The claims against him stem from agreements he entered to guarantee the debts of

two entities: PriMed Physicians, Inc. and Central Alabama Primary Care Specialists, LLLP.

In 2012, PriMed executed a Visa credit-card agreement with Sterling Bank and, in early 2015, obtained a loan from the bank in the amount of $ 838,900.00.

In 2014, Herrod executed a guaranty agreement by which he "guarantee[d] to Lender the payment and performance of each and every debt, liability and obligation of every type and description which [PriMed] may now or at any time hereafter owe to Lender . . . (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several . . .)." PriMed Guaranty (doc. no. 25-1) at 11.  The guaranty states that Herrod "will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or

3

enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings." Id. at 12. It further provides that Herrod is liable for "accrued interest." Id.

In 2014, Central Alabama obtained a loan from Sterling Bank in the face amount of $ 1,250,000.00. That same year, Herrod executed a guaranty for the debts of Central Alabama, in which he "guarantee[d] to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender." Central Alabama Guaranty (doc. no. 25-2) at 7. The guaranty also requires him to pay accrued interest and to "pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings." Id. at 7-8.

PriMed has failed to remit full payment of its credit-card debt and note, which are past due.

4

Further, PriMed is in default on its note with Sterling Bank. Under the terms of PriMed's note, default is established when the borrower "become[s] insolvent" or when the debt comes due and is not paid. PriMed Note (doc. no. 25-1) at 5. The note has come due, but PriMed has not paid its obligations to Sterling Bank under the note; also, PriMed has filed a Chapter 7 bankruptcy petition. Thus, under the terms of its note with Sterling Bank, PriMed is in default.

Under the terms of its note with Sterling Bank, Central Alabama is in default because its debts have come due and it has not paid its obligations to Sterling Bank and, also, because it has petitioned for Chapter 7 bankruptcy and is insolvent. Central Alabama Note (doc. no. 25-2) at 3. Under the terms of its note, Central Alabama is in default of its obligation to Sterling Bank.

Herrod has not paid Sterling Bank the money owed by PriMed or Central Alabama, and the debts have not been otherwise paid.

5

## III. ANALYSIS

Sterling Bank moved for summary judgment against Herrod on November 17, 2015, on its claims that he has breached the guaranty agreements.  The court directed Herrod, who is pro se, to respond to the motion by December 16, 2015.  In that order, the court explained the requirements for responses to motions for summary judgment under Federal Rule of Civil Procedure 56 and warned that, "Failure to follow the requirements of Rule 56 and this order regarding the proper way to oppose a motion for summary judgment may result in the court granting the motion and entering final judgment in favor of the moving party without there being a trial."  Order (doc. no. 33) at 4.  Herrod did not respond.  Nevertheless, on a motion for summary judgment, the court must determine whether Sterling Bank has shown that it is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56.

A federal court sitting in diversity must apply the choice-of-law rules of the jurisdiction in which it sits.  See, e.g., Manuel v. Convergys Corp., 430 F.3d

1132, 1139 (11th Cir. 2005); Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 135 F.3d 750, 752 (11th Cir. 1998). Thus, this court must apply Alabama choice-of-law rules. "Alabama follows the principle of 'lex loci contractus,' which states that a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction. Alabama law has long recognized the right of parties to an agreement to choose a particular state's laws to govern an agreement." Cherry, Bekaert & Holland v. Brown, 582 So. 2d 502, 506 (Ala. 1991) (citations omitted).

Both guaranty agreements contain a provision that the agreement "shall be governed by the laws of the State where the Lender is located." PriMed Guaranty (doc. no. 25-1) at 14; Central Alabama Guaranty (doc. no. 25-2) at 10. Sterling Bank and Synovus Bank are located in Georgia, see First Amended Complaint (doc. no. 6) at 1, so Georgia breach-of-contract law applies.

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant

damages (3) to the party who has the right to complain about the contract being broken." Norton v. Budget Rent A Car Sys., Inc., 705 S.E.2d 305, 306 (Ct. App. Ga. 2010) (citation omitted). "Where . . . the record shows that the promissory notes and guarantees were duly executed by the debtors and that they are in default, a prima facie right to judgment as a matter of law [i]s established, and the burden shift[s] to [the debtor or guarantor] to produce or point to evidence in the record which establishe[s] an affirmative defense." Secured Realty Inv. v. Bank of N. Georgia, 725 S.E.2d 336, 338 (Ct. App. Ga. 2012).

As described in the background section above, Sterling Bank has submitted evidence that Herrod executed agreements with Sterling Bank to guarantee PriMed's note and credit-card agreement and Central Alabama's note. The evidence also establishes a breach of the agreements because PriMed's credit card is past due, both Primed and Central Alabama are in default on their notes, and Herrod has not paid off their debts.

Further, Sterling Bank has established the amount of damages by affidavit. Regarding the PriMed note, David Hammond, a "Senior Special Assets Officer for Synovus," of which Sterling Bank is a division, attests: "As of November 6, 2015, each of the guarantors was obligated to Sterling Bank regarding the PriMed Note in the principal amount of $ 783,295.96, plus accrued interest of $ 17,835.38, and late fees of $ 500.00, for a total of $ 801,631.34. They are further obligated to Sterling Bank for per diem interest going forward from November 7, 2015 in the amount of $ 92.47 per day, plus attorneys' fees and costs." Hammond Affidavit (doc. no. 25-2), at 12, 15. As to the PriMed credit-card agreement, Hammond states: "As of November 5, 2015, each of the guarantors was obligated to Sterling Bank regarding the PriMed Credit Card Agreement in the amount of $ 5,457.49. They are further obligated to Sterling Bank for attorneys' fees and costs." Id. at 16. Finally, as to the Central Alabama note, Hammond states: "[A]s of November 6, 2015, Joseph L. Herrod was obligated to Sterling Bank

9

in the principal amount of not less than $ 1,162,192.06, plus accrued interest of $ 16,679.72, and late fees of $ 1,500.00, for a total of $ 1,180,371.78.  He was further obligated to Sterling Bank for per diem interest going forward from November 7, 2015[,] in the amount of $ 137.85, plus reasonable attorneys' fees and costs." Id., at 17.

Also submitted in support of the motion is an affidavit from Rodney E. Nolen, an Alabama attorney who primarily practices in the areas of commercial collections and commercial litigation and has been a "Certified Creditor Rights Specialist" for over 20 years.  Nolen Affidavit (doc. no. 25-4) at 8.  Nolen sets forth that Herrod's guarantor agreements require him to "pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings."   Id. at 9-10.   After reviewing the criteria set forth in Johnson v. Georgia Highway

10

Express, Inc., 488 F.2d 714 (5th Cir. 1974), Nolen attests that, "Based upon [his] experience in collection of delinquent commercial loans and debts, . . . attorneys' fees of $ 40,081.57, which is equal to 5 % of the $ 801,631.34 debt owed on the PriMed Note (as guaranteed by the Defendants herein), [and] attorneys' fees of $ 272.87, which is equal to 5 % of the $ 5,457.49 debt owed on the PriMed Credit Card Agreement, and attorneys' fees of $ 59,018.59, which is equal to 5 % of the $ 1,180,371.78 debt owed on the Central Alabama Note, [are] appropriate and reasonable in this matter." Id. at 13-14.

Having submitted evidence sufficient to show breach of Herrod's guaranty agreements and the amount of damages stemming from those breaches, Sterling Bank has established that it is entitled to judgment as a matter of law.  Herrod has failed to respond in any way. Having reviewed the record, the court sees no basis for an affirmative defense.  Accordingly, the motion for summary judgment will be granted.

11

An appropriate judgment will be entered.

DONE, this the 19th day of February, 2016.

                            <u>/s/ Myron H. Thompson</u>
                           **UNITED STATES DISTRICT JUDGE**